DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CANDACE MICHELLE MOORE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-2151

[June 5, 2024]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Frank S. Castor, Judge; L.T. Case No. 50-2022-MM-010248-AXXX-MB.

Carey Haughwout, Public Defender, and Robert Porter, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant, Candace Moore, timely appeals the judgment of conviction and sentence for five first-degree misdemeanor charges for unlawful abandonment or confinement of an animal. She claims that the trial court erred in failing to grant a judgment of acquittal, because the State failed to present any evidence that she was the person who confined the animals or had responsibility for their care. We agree and reverse.

Appellant and her estranged husband, Michael Moore (Michael), resided on property owned by appellant's grandfather. Appellant was disabled and lived in the residence, while Michael lived in a trailer on the property. Michael was wanted on an arrest warrant. When officers arrived at the property in the early morning hours to execute the warrant, they discovered four dogs in outside enclosures on the property and one in the trailer in a small crate, some with no water or food. The officers then went into the residence of appellant and removed her and her son from the home. They observed dogs in enclosures in the residence as well.

An officer called for an animal control officer to assist. The animal control officer arrived and assessed the condition of all of the dogs. As to the dogs in the house where appellant resided, the officer found that all were in good condition and their enclosures were adequate, containing sufficient food and water. As to the dogs in the outside enclosures, the officer found all the dogs to be in good condition but found their enclosures were either too small for the dog or did not provide adequate exchange of air and/or room to exercise. Further, most enclosures were without dishes of food or water, or their dishes were empty.[1]

Another officer spoke with appellant during the inspection. Appellant advised the officer that Michael was in charge of the outside dogs, and she was in charge of the inside dogs. Despite being advised, the officer charged both appellant and Michael because she did not know who had custody or responsibility for the dogs. As she testified, it was one or the other. She did not know who had put the dogs in the various outside enclosures which she found objectionable. Because the dogs were in the yard behind the house, the officer thought appellant had access to the dogs and could have removed them if she felt it was unsafe.

At the close of the State's case, the appellant moved for a judgment of acquittal, arguing that the State had failed to prove that it was appellant who had placed the dogs in the cage. The State argued that she was on the property and was aware of the dogs in the cages, even if she did not put them in the cages. Therefore, she could be liable for knowingly confining the dogs. The trial court denied the motion for acquittal.

Appellant's son testified for the defense that at the time of the arrest, he was living with his mother and taking care of her because of her disabilities. He knew the dogs were on the property, but he did not go in the back yard where they were because Michael was very aggressive. The son testified that Michael was very controlling of his dogs and neither he nor his mother had any responsibility for taking care of the outside dogs.

Appellant also testified that Michael was a very controlling and aggressive person, both with his dogs and with her, and Michael was the one who put the dogs in their enclosures. She tried to get Michael to put the dogs in larger cages, but he refused. As to the dog in the trailer, only Michael had access to the trailer.

---

[1] The officers observed the dogs around 6:00 a.m. in the cages. Appellant testified that Michael only caged the dogs at night, and he fed them every night before he put them in the enclosures.

2

Appellant again moved for a judgment of acquittal at the end of all the testimony, but the court denied the motion. After closing argument, the case was submitted to the jury which found appellant guilty on all charges. Appellant now brings this appeal.

The denial of a motion for judgment of acquittal is reviewed de novo. *Johnston v. State*, 863 So. 2d 271, 283 (Fla. 2003).

Section 828.13, Florida Statutes (2022) states:

> (1) As used in this section:
>
> (a) "Abandon" means to forsake an animal entirely or to neglect or refuse to provide or perform the legal obligations for care and support of an animal by its owner.
>
> (b) "Owner" includes any owner, custodian, or other person in charge of an animal.
>
> (2) **Whoever:**
>
> (a) **Impounds or confines any animal in any place and fails to supply the animal during such confinement with a sufficient quantity of good and wholesome food and water,**
>
> (b) **Keeps any animals in any enclosure without wholesome exercise and change of air,**
>
> . . . .
>
> is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not more than $5,000, or by both imprisonment and a fine.

*Id.* (emphasis added). A version of this law has been around since 1889. *See* Ch. 3921, § 2 Laws of Fla. (1889).

"If statutory language is clear, unambiguous, and conveys a definite meaning, there is no reason to resort to the rules of statutory interpretation." *State v. Estime*, 259 So. 3d 884, 888 (Fla. 4th DCA 2018) (quoting *Bryson v. State*, 42 So. 3d 852, 854 (Fla. 1st DCA 2010)). "A court is not permitted to judicially modify a statute by adding words not included by the legislature, nor can it limit the express terms of an unambiguous statute." *Id.* "Where words of common usage are not defined in a statute,

they are construed in their plain and ordinary sense." *Id.* "The plain and ordinary meaning of a word or term is often examined by reference to a dictionary." *Id.*

The statute punishes "whoever" "confines," "impounds," or "keeps" the animals. "Whoever" is defined as "whatever person." *Whoever*, Merriam-Webster Online Dictionary, https://www.merriam- webster.com/dictionary/whoever (last visited Apr. 30, 2024). The verb "confine" is defined as "to hold within a location." *Confine*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/confine (last visited Apr. 30, 2024). The verb "impound" is defined as "to shut up in or as if in a pound," and "confine" is listed as a synonym. *Impound*, Merriam-Webster Online Dictionary, https://www.merriam- webster.com/dictionary/impound (last visited Apr. 30, 2024). Lastly, the verb "keep" is defined as "to retain in one's possession or power." *Keep*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/keep (last visited Apr. 30, 2024).

Thus, one who "impounds" or "confines" any animal and "fails to supply the animal during such confinement with a sufficient quantity of good and wholesome food and water," or "keeps" any animal "in any enclosure without wholesome exercise and change of air," is guilty of a misdemeanor. The statutory language does not support the State's theory that simply knowing that an animal is so confined or kept violates the statute. The statute requires one's participation in the confining or keeping of an animal in an enclosure in violation of the statute, and the State showed neither in this case. Moreover, there is no evidence that the outside dogs were even owned by appellant or that she had any possessory interest or power over them such that she could have had any participation in the manner in which they were confined or kept. The evidence was undisputed that Michael was responsible for their care. The evidence showed that appellant did not participate in confining or keeping the dogs in the enclosures in violation of the statute.

The State conflated her knowledge that they were kept in the crates to knowingly confining them there. In fact, the prosecutor argued in closing, "Ms. Moore did say she knew it was wrong for these dogs to be in these cages, but she did nothing about it." When defense counsel objected that this was a misstatement of the law, which the court overruled, the prosecutor continued: "Correct, *she wasn't legally obligated to do so, except she was because this was not okay*. . . . Ms. Moore should have done something about it." (Emphasis added.). This misstatement of the law would punish appellant not for confining the dogs but for failing to rescue them, when the State failed to prove that she had any participation

4

in the manner in which they were confined or kept.  The mere fact that they were on her property is insufficient to show that it was *she* who confined or kept them in the enclosures in violation of the statute.

This is not to say that the State could not charge a person as a principal in violating the statute, if it could show that the person "abets, counsels, hires, or otherwise procures such offense to be committed[.]"  *See* § 777.011, Fla. Stat. (2022).  Here, the State did not charge appellant as a principal or prove that she acted as a principal to the crime.  To the contrary, the appellant stated that she had asked Michael, who was in charge of the dogs, to treat the dogs better, and he refused.

Consequently, the court should have granted a judgment of acquittal, as the State failed to prove that appellant confined or impounded the dogs in violation of the statute.  We reverse, vacate the convictions, and direct a judgment of acquittal be entered.

*Reversed and remanded.*

CONNER and ARTAU, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***